UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SALACIA LOGISTICS                                    CIVIL ACTION

VERSUS                                               NO. 15-01512

FOUR WINDS LOGISTICS, LLC                            SECTION "L"

### ORDER AND REASONS

Before the Court is Defendant's Motion to Dismiss for lack of personal jurisdiction or alternatively, to transfer venue. (R. Doc. 9). On July 8, 2015, the Court heard oral argument on the motion. The Court has reviewed the parties' memoranda as well as the applicable law and now issues this Order and Reasons.

**I.    BACKGROUND**

This case arises out of a maritime contract dispute between Plaintiff Salacia Logistics LLC ("Salacia") and Defendant FWLL, LLC d/b/a Four Winds Logistics, LLC ("FWLL"). Salacia is a limited liability company organized and existing under the laws of Delaware with its headquarters in New Orleans. FWLL is a limited liability company organized and existing under the laws of Texas with its principle place of business in San Antonio, Texas. FWLL provides sand to oil and gas production companies. FWLL contracted with Salacia to provide logistical support for FWLL in transporting the sand from its source location to various ports.

In October, 2014, Salacia and FWLL entered into a contract, titled "Logistics Agreement" ("Six Barge Agreement"). On November 10, 2014, Salacia and FWLL executed an amendment to the Six Barge Agreement, specifically amending the payment terms. Under this

amended agreement, Salacia agreed to provide third-party logistical services and vessels for FWLL's use, including one tugboat and six barges to haul sand on the Mississippi River and in the Gulf of Mexico. The term of the agreement was one-year, running through October 23, 2015. In order carry out this agreement, Salacia contracted with a third-party tugboat operator for the use of a tugboat for the one-year period. (Rec. Doc. 13 at 2).

In January 2015, Salacia and FWLL entered into a second Logistics Agreement ("Three Barge Agreement"), incorporating substantially the same terms of the Six Barge Agreement, whereby Salacia agreed to provide logistical services in the form of three barges for hauling sand. Under both agreements, each party has a right to cancel or terminate either agreement after the initial one-year contract term and upon providing 30 days written notice to the other party. According to Salacia, on March 19, 2015, FWLL's CEO unilaterally terminated both agreements before the end of the respective terms without cause or notice. (Rec. Doc. 1-3). The Three and Six Barge Agreements are written agreements and contain forum selection clauses, which state that the party filing suit must do so in state or federal court in the state in which the "materials" are located.

Plaintiffs further aver that in a February 2015 oral agreement, separate from the Six and Three Barge written agreements, FWLL hired Salacia to provide a fleet of six barges to transport sand from Greenville, Mississippi to Corpus Christi, Texas on a "spot run" ("Spot Run Agreement"). *Id*. Salacia leased six additional barges and delivered the barges and their cargo to Corpus Christi on February 18, 2015. FWLL failed to accept the sand upon delivery and at any time prior to March 22, 2015, during which time Salacia was forced to store the sand. As of June 30, 2015, FWLL had accepted delivery of only three of the six barges. (Rec. Doc. 13 at 3).

On March 26, 2015, Salacia filed a petition for damages against FWLL in Louisiana state court asserting claims for breach of contract, breach of the implied contractual obligation of good faith, and unjust enrichment for the expense incurred by Salacia as a result of FWLL's refusal to accept timely delivery of the barges and their cargo. (Rec. Doc. 1-3). FWLL removed the suit to Federal Court and filed the instant motion to dismiss for lack of personal jurisdiction pursuant to FRCP 12(b)(2) or alternatively, to transfer venue to the Southern District of Texas. (R. Doc. 9).

## II.     MOTION TO DISMISS

Defendant's primary argument is that this Court has neither general nor specific jurisdiction because FWLL lacks the necessary minimum contacts with Louisiana. With respect to general jurisdiction, Defendant emphasizes that it is has no office in Louisiana and maintains no presence in Louisiana. (Rec. Doc. 9 at 4). Rather, it is an LLC organized under Texas law with its principle place of business in Texas. Thus, Defendant argues that it does not have continuous and systematic contacts with Louisiana as to render it essentially at home in the forum state. According to the Defendant, it can only be said to be "at home" in Texas. *Id*.

With respect to specific jurisdiction, Defendant asserts that the only apparent connections to Louisiana are that part of the transportation route included portions of the Mississippi River that travel through Louisiana and that the contracted service was to be performed by Salacia in New Orleans. Defendant contends that the fact that some products traveled through the forum state and the Plaintiff unilaterally carried out its duties under the contract in the forum state does not constitute the minimum contacts sufficient to support specific jurisdiction. (Rec. Doc. 9 at 5).

Plaintiff opposes the motion. In its brief, Plaintiff emphasizes that FWLL maintains a Twitter account where, on June 15, 2015, it posted that it provides South Texas, West Texas, **Louisiana** and Mississippi with the transloading of FRAC sand. (Rec. Doc. 13 at 9) (emphasis

added). Further, Plaintiff states that FWLL has posted a number of photos and posts onto its Facebook timeline that boast of the company's national reach and show significant business contacts with Louisiana, including the sale of sand located in Louisiana and an advertisement that it was hiring outside sales executives in several locations, specifically including the availability of positions in Louisiana. (Rec. Doc. 13 at 7-8). Plaintiff argues that in light of these deliberate efforts by Defendant to cultivate a relationship with the Plaintiff, a Louisiana business, and to establish its business in Louisiana, Defendant could have reasonably anticipated being haled into court in Louisiana.

 Plaintiff further argues that FWLL engaged in regular and continuous contact with Salacia throughout the negotiation and performance of the Three Barge, Six Barge, and Spot Run Agreements. In addition to the aforementioned Twitter and Facebook posts, Salacia emphasizes the following intentional contact by FWLL directed at Louisiana in pursuit of the contracts with Salacia: (i) three meetings where FWLL principals made trips to New Orleans; (ii) approximately twenty-five phone calls between FWLL and Salacia representatives in Louisiana; (iii) forty phone calls between FWLL principals and Salacia's managing member, Ashely Pitts, while she was in Louisiana; and (iv) text messages sent by FWLL to Pitts regarding the Six Barge and Spot Run Agreements. (Rec. Doc. 13 at 7). Further, Salacia states that FWLL avails itself of Louisiana laws by directing the transportation of sand through Louisiana and by agreeing to be subject to the laws of Mississippi, Louisiana, or Texas, depending on where any "material" under the agreement was located as per the terms of the Three and Six Barge Agreements. *Id.* at 6.

 Additionally, according to Salacia, approximately 18,000 tons of sand transported by Salacia pursuant to the Three and Six Barge Agreement was located in New Orleans as of June

30, 2015. (Rec. Doc. 13 at 5). Defendant submitted a supplemental memorandum, in which it presents the declaration of FWLL's Controller. FWLL argues that the declaration proves that Salacia's causes of action do not relate to the sand in New Orleans. (R. Doc. 27). FWLL paid Salacia for its services in transporting the sand currently located in New Orleans. Accordingly FWLL argues that exercising specific jurisdiction over FWLL based on the sand in New Orleans is improper as the delivery of that sand does not form the basis of the current contractual dispute. *Id.* Pointing to FWLL's demand for a refund shortly after terminating the Six and Three Barge Agreements, Salacia argues that there is a dispute that impacts the sand located in New Orleans. Thus, according to Salacia, the requisite nexus between the Defendant's contacts and the Plaintiff's claims exist. (R. Doc. 28).

    a. LAW AND ANALYSIS

        i. The Personal Jurisdiction Inquiry

"A federal district court has personal jurisdiction over a nonresident defendant to the same extent as a state court in the state in which the district court is located." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242 (5th Cir. 2008). Louisiana's "long-arm statute authorizes the exercise of personal jurisdiction to the limits of due process." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 365 (5th Cir. 2010); *see also* La. Rev. Stat. Ann. § 13:3201(B). "The exercise of personal jurisdiction can thus be maintained if the nonresident defendant has purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state," *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 716 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)), "and if the exercise of jurisdiction over the

nonresident defendant does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).

"There are two types of minimum contacts: contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). For a corporation, "the paradigm forum for the exercise of general jurisdiction is… one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). Post *Goodyear*, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principle place of business." *Monkton Ins. Servs. Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

However, the court may still exercise specific jurisdiction where a "nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel*, 517 F.3d at 243). "A nonresident 'may permissibly structure his primary conduct so as to avoid being haled into court in a particular state.'" *Nuovo Pignone, Spa v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)).

For specific jurisdiction, the defendant's conduct at issue in the lawsuit must create a substantial connection with the forum state. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The "'minimum contacts' analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Id.* at 1122 (noting that courts "have upheld the assertion of jurisdiction over defendants who have purposefully reached out beyond their State and into another by, for example, entering into a contractual relationship that envisioned continuing and wide-reaching contacts in the forum state") (internal citations and quotations omitted).

"Contracting with a resident of the forum state does not alone support the exercise of jurisdiction over [a] defendant." *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586 (5th Cir. 2003); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Instead, in cases involving disputes arising out of a contract, the inquiry is more nuanced, looking to "the factors of prior negotiation, contemplated future consequences, terms of the contract, and the parties' actual course of dealing." *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985). Thus, in this inquiry, the place of contract negotiation and execution, the place of contract performance, and the state whose laws the parties have chosen to govern the contract are all significant in evaluating whether specific jurisdiction exists. *See Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992). The place of contract performance, in particular, has been described as "a 'weighty consideration.'" *Polythane Sys., Inc. v. Marina Ventures Int'l*, Ltd., 993 F.2d 1201, 1205 (5th Cir. 1993) (quoting *Command-Aire,* 963 F.2d at 94).

"The plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a prima facie case if the district court rules without an evidentiary hearing." *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). This means that "[p]roof by a preponderance of the evidence is not required." *Id*. In addition, it means that "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985); *accord Walk Haydel*, 517 F.3d at 241 (noting that "even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts").

"When a plaintiff makes a prima facie case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006). "To evaluate the reasonableness of exercising jurisdiction," a court considers "(1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the shared interest of the several states." *Johnson*, 523 F.3d at 615. The burden is on the defendant to "make a 'compelling case' that traditional notions of fair play and substantial justice would be violated by the exercise of jurisdiction." *Id* (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). "It is rare to say [that] the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *Wien Air Alaska*, 195 F.3d at 215 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995)).

### b. General Jurisdiction Analysis

Defendant argues that it lacks the minimum contacts necessary for the Court to exercise general jurisdiction over it. In its opposition, Plaintiff argues that it is proper for the Court to exercise general jurisdiction over the Defendant because the Defendant actively pursues, services, and negotiates business in Louisiana. As evidence, Salacia points to the following: (i) FWLL's statement of national reach, (ii) its motto, (iii) its advertisements for both the sale of the sand currently located in New Orleans and the hiring of sales executives in Louisiana, and (iv) its Twitter feed claiming the provision of service to Louisiana.

The question for the Court is whether the Defendant's contacts with Louisiana are "so continuous and systematic as to render it essentially at home in the forum state." *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014). On the one hand, Defendant has solicited business in

Louisiana and owns sand located in Louisiana. On the other hand, FWLL neither maintains an office nor currently employs anyone in Louisiana and the two advertisements and Twitter post are insufficient to establish that FWLL is "at home" in Louisiana. Thus, considering the high threshold set in *Daimler* and the fact that it is "incredibly difficult to establish general jurisdiction" in a forum other than a corporation's place of incorporation or principal place of business, *Monkton* 768 F.3d at 432, Salacia has failed to prove that FWLL is subject to general jurisdiction in Louisiana. Salacia's evidence and arguments cannot overcome the high standard that the Fifth Circuit applies to the general jurisdiction analysis. FWLL—a Texas limited liability company with its principal place of business in San Antonio, Texas—cannot fairly be regarded at home in Louisiana.

   c. **Specific Jurisdiction Analysis**

Specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. In evaluating whether specific jurisdiction exists, the place of contract negotiation, execution, and performance, and the state whose laws the parties chose to govern the contract are all significant considerations. *See Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).

In this case, FWLL entered into at least two contracts with Salacia through negotiations that took place over telephone calls and text messages directed to Salacia in Louisiana and through FWLL principals who physically entered the state to meet and negotiate with Salacia in New Orleans on three occasions. Part of the negotiated contracts were performed in Louisiana; the barges and cargo necessarily traveled through Louisiana on the Mississippi River. Approximately, 16,900 tons of the sand transported pursuant the Three and Six barge Agreements is located in New Orleans. Moreover, the Forum Selection Clause—which

9

definitively applies to the Three and Six Barge Agreements—puts FWLL on notice of the possibility of being haled into Court in Louisiana where the "material" subject to the Agreements could be (as it undoubtedly had to travel through Louisiana at some point).

Although Defendant cites several cases on the issue of specific jurisdiction in support its position, a closer look at those cases reveal that they are distinguishable from the present situation. For example, Defendant cites *Patterson v. Dietze, Inc.,* 764 F.2d 1145, 1147 (5th Cir. 1985), in which the Court held that making telephone calls and wiring payments to the forum in connection with entering into contracts with parties located in the forum was insufficient to establish specific jurisdiction because all material performance occurred outside the forum, including negotiation and preparation. In the present case, however, Defendants visited the forum on three occasions to negotiate the contracts, the parties entered into at least two contracts together requiring ongoing negotiation, and part of the transit contemplated within the contracts occurred in Louisiana. The case that most closely supports the Defendant's position is *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777-78 (5th Cir. 1986), wherein the Fifth Circuit held that numerous telephone calls from defendant to the Texas forum during the course of performance of the contract was insufficient to support specific jurisdiction. However, in *Holt*, the contract contained a provision specifying that Oklahoma law would govern the agreement, and performance was centered in Oklahoma. In the present case, the forum selection clause embraced the possibility of Louisiana as the appropriate forum, and part of the performance occurred in Louisiana. Thus, given that FWLL (i) entered into at least two contracts with a Louisiana company, (ii) permitted the transportation of its goods through Louisiana, (iii) expressly agreed to subject itself to the laws and courts of Louisiana through its forum selection clause, (iv) travelled to Louisiana on three occasions to negotiate the contracts at issue, and (v) is

currently storing product pursuant to the contracts at issue in New Orleans, Salacia has established the minimum contacts necessary to establish a prima facie showing of this Court's specific jurisdiction over FWLL.

Accordingly, the burden now shifts to the Defendant to show that the exercise of jurisdiction is so unreasonable as to offend traditional notions of fair play and substantial justice. To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a "compelling case" against the exercise of jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985). Moreover, "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). Louisiana is not a distant and inconvenient forum for a Texas corporation, especially a corporation that advertises its business and stores property in Louisiana. Additionally, Louisiana has an interest in protecting its residents from breaches of contracts negotiated or entered into in Louisiana. Notably, FWLL asserts that the United States District for the Southern District of Texas is a more convenient and efficient venue based on the pendency of a related action there. However, as Salacia pointed out at oral argument, it is neither a party to that action nor intends to become a party to that action. Thus, the Court finds no overwhelming burden to the Defendant that shows that jurisdiction would be so unreasonable as to offend the traditional notions of fair play and substantial justice.

### III.    ALTERNATIVELY, MOTION TO TRANSFER VENUE

#### a. Parties' Arguments

Defendant argues that the lawsuit should be transferred to the United States District Court for the Southern District of Texas in accordance with the forum selection clause, which provides

that "any litigation arising out of [the] Agreement or performance [thereunder] must be filed in any state or federal court located in the state in which the material is located."  Salacia delivered six barges of sand to Corpus Christi, and FWLL only accepted delivery of two of the six barges.  Thus, Defendant argues that because the sand is located in Corpus Christi, Salacia was required to bring suit in a state or federal district court in Texas.  Plaintiff opposes the motion, arguing that the forum selection clause is contained only in the Three and Six Barge Agreements and the "material" in Corpus Christi was hauled by Salacia pursuant to the Spot Run Agreement, for which there is no written contract, and thus, no forum selection clause.  Accordingly, Plaintiff argues that the forum selection clause contained in the two written contracts is inapplicable to any "material" located in Texas since that material is governed by an oral contract without a forum selection clause.  Further, Plaintiff argues that if the forum selection clause does apply in the present case, then this Court is the proper venue because approximately 18,000 tons of sand transported by Salacia pursuant to the Six and Three Barge Agreements are located in New Orleans, the forum selected by the plaintiffs.

      **b.  Law and Analysis**

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S.Ct. 568, 581 (2013).  Although 28 U.S.C. § 1404(a) provides that a district court "*may* transfer any civil action . . . to any district or division to which all parties have consented" (emphasis added), the Supreme Court has explained that section 1404(a) "requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'"  *Id.* (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 23 (1998)(Kennedy, J., concurring)). That said, a forum selection clause is not dispositive of the transfer issue.  The

Supreme Court has also stated that "[i]t is conceivable in a particular case… that because of [public interest factors] a district court acting under 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1998).

The facts surrounding the forum selection clause and the material at issue are hotly disputed. FWLL argues that the forum selection clause should apply with regards to the sand in Corpus Christi. Salacia argues that the forum selection clause should not apply and, if it does apply, it should apply to the sand located in New Orleans. The plain language of 1404(a) states that a district court "may" transfer a case to a district where the parties have "consented." The factual dispute makes clear the lack of consent. Moreover, the "forum selection clause" is not a true forum selection clause. It does not "select" a forum. Rather, it gives a vague pronouncement as to proper venue based on the location of the material. Despite the parties' memoranda and exhibits, the application of the forum selection clause and the material at issue remains uncertain. The Court declines to exercise its discretion to upset the Plaintiff's chosen forum when personal jurisdiction exists and the Defendant has offered no compelling reasons as to why venue in this Court is either improper or unfair. After carefully weighing the relevant case-specific factors, the Court determines that the "forum selection clause" contained in the written agreements does not justify transferring venue to the Southern District of Texas. Of particular importance in reaching this decision is the fact that the clause does not select a particular venue as do traditional forum selection clauses, and, more importantly, the clause contemplates the possibility of proper venue in Louisiana.

### IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's 12(b)(2) Motion to Dismiss or, in the alternative, transfer venue (R. Doc. 9) is hereby DENIED.

New Orleans, Louisiana, this 3rd day of August, 2015.

_____
UNITED STATES DISTRICT JUDGE